UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TRINA L. YOUNG,

                                    Plaintiff,

                                                              Case # 15-CV-344-FPG

v.

                                                              DECISION AND ORDER

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

        Trina L. Young ("Young" or "Plaintiff") brings this action pursuant to Titles II and XVI

of the Social Security Act ("the Act") seeking review of the final decision of the Acting

Commissioner of Social Security ("the Commissioner") that denied her applications for

disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").  ECF No. 1.

This Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

        Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure.   ECF Nos. 7, 9.   For the reasons that follow, the

Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

        On April 4, 2012, Young protectively filed applications for DIB and SSI with the Social

Security Administration ("the SSA").  Tr.[1] 132-38, 139-44.   She alleged that she had been

disabled since March 5, 2012, due to numerous conditions. Tr. 154.   After her application was

denied at the initial administrative level, a hearing was held before Administrative Law Judge

David S. Lewandowski ("the ALJ") on July 8, 2013 in which the ALJ considered Young's

application *de novo*.  Tr. 36-76.   Young appeared at the hearing with her representative and

---

[1]         References to "Tr." are to the administrative record in this matter.

testified.  *Id.*  Jay Steinbrenner, a Vocational Expert ("VE"), also testified.  Tr. 69-75.  On October 24, 2013, the ALJ issued a decision finding that Young was not disabled within the meaning of the Act.  Tr. 20-30.  That decision became the Commissioner's final decision when the Appeals Council denied Young's request for review on February 18, 2015.  Tr. 1-6. Thereafter, Young commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.     District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted).  It is not this Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.    Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71

(1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).  The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work

experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ's decision analyzed Young's claim for benefits under the process described above.  Tr. 15-27.  At step one, the ALJ found that Young had not engaged in substantial gainful activity since the alleged onset date.  Tr. 22.  At step two, the ALJ found that Young had the following severe impairments: lumbar osteoarthritis, obesity, asthma, collapsed arch, depression, and dysthymic disorder.  Tr. 22-23.  At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal an impairment in the Listings.  Tr. 23-24.

Next, the ALJ determined that Young retained the RFC to perform sedentary work,[2] but she can stand for only 15 minutes at a time, can engage in only occasional postural activities, and cannot climb ladders, ropes, or scaffolds.  Tr. 24-28.  The ALJ also determined that Young must elevate her legs four times a day for 30 minutes at a time, and avoid environmental irritants, wetness, and humidity.  *Id.*  Young can understand, remember, and carry out simple instructions, and she can perform simple tasks.  *Id.*

At step four, the ALJ relied on the VE's testimony and found that this RFC prevents Young from performing her past relevant work as a records clerk, data clerk, and medical biller.  Tr. 29.  At step five, the ALJ relied on the VE's testimony and found that Young is capable of making an adjustment to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience.  Tr. 29-30.  Specifically, the VE opined

---

[2]        "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

that Young could work as a switchboard operator, telephone survey worker, and telephone marketer. *Id.* Accordingly, the ALJ concluded that Young was "not disabled" under the Act. Tr. 30.

## II.   Analysis

Young raises four challenges to the ALJ's decision: (1) remand is required because the ALJ failed to perform a function-by-function analysis as to Young's need to elevate her legs during the workday; (2) the RFC finding that Young needs to elevate her legs during the workday is not supported by substantial evidence; (3) the RFC assessment is not supported by substantial evidence because the ALJ did not consider Young's ability to deal with stress; and (4) remand is required because the ALJ failed to identify, explain, and resolve inconsistencies between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). ECF No. 7-1, at 17-28. These arguments are addressed in turn below.

### A.   The ALJ Was Not Required to Perform a Function-by-Function Assessment as to Young's Need to Elevate Her Legs During the Workday.

As part of his RFC determination, the ALJ found that Young must elevate her legs four times a day for 30 minutes at a time. Tr. 24-28. Young asserts that the ALJ erred because he failed to "conduct a function-by-function analysis" and specifically explain how high she needed to elevate her legs. ECF No. 7-1, at 17-20. This argument is misplaced.

"The Act's regulations require that the ALJ include in his RFC assessment a function-by-function analysis of the claimant's functional limitations or restrictions and an assessment of the claimant's work-related abilities on a function-by-function basis." *Palascak v. Colvin*, No. 1:11-CV-0592 (MAT), 2014 WL 1920510, at *10 (W.D.N.Y. May 14, 2014) (internal quotation marks and citation omitted). This means that "the ALJ must make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop,

or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity." *Knighton v. Astrue*, 861 F. Supp. 2d 59, 66 (N.D.N.Y. 2012) (citations omitted); 20 C.F.R. §§ 404.1513(c)(1), 404.1569a(a), 416.913(c)(1), 416.969a(a). Thereafter, "[t]he claimant's RFC can be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Knighton*, 861 F. Supp. 2d at 66 (citation omitted).

Young does not dispute that the ALJ assessed her functional limitations before he determined that she was capable of sedentary work. Rather, she asserts that the ALJ should have specified how high she would have to elevate her legs during the workday because it would affect the types and number of jobs available to her. ECF No. 7-1, at 18-19. At Young's hearing, her representative asked the VE to confirm whether the named jobs would allow Young to elevate her legs four times a day for 30 minutes at a time. Tr. 72. The VE responded that "[a]s long as she doesn't have to elevate above chest level that typically can be accommodated." Tr. 72-73. The ALJ adopted the VE's testimony and concluded that Young could perform other jobs in the economy. Tr. 29-30.

There is no evidence that Young needed to elevate her legs above waist or chest level. To do so, she would need to lie down during the workday, which is an additional limitation that the ALJ did not impose. Tr. 24-28. No medical sources in the record opined that Young needed to elevate her legs above her waist or chest (*see, e.g.*, Tr. 323-24, 334-38, 390), and Young testified that she would *sit down* to elevate her legs due to pain and swelling (Tr. 43, 45-49). Accordingly, this Court finds that the ALJ's RFC assessment was sufficiently specific and that he did not err by failing to indicate exactly how high Young needed to elevate her legs during the workday.

**B.      The RFC Finding that Young Must Elevate Her Legs During the Workday is Supported by Substantial Evidence.**

Young also argues that the ALJ's "highly specific finding" that she needs to elevate her legs four times a day for 30 minutes at a time is not supported by substantial evidence. ECF No. 7-1, at 20-22.  Specifically, Young asserts that the ALJ's finding is inconsistent with the opinion of James Burruano, M.D. ("Dr. Burruano") and with her hearing testimony.  ECF No. 7-1, at 21 (citing Tr. 47-49, 390).

"Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order).  Dr. Burruano opined that Young needed to elevate her legs "occasionally" during an eight-hour workday.   Tr. 390. According to Social Security Ruling 83-10, "occasionally" means up to one-third of the workday.  S.S.R. 83-10, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983).  Thus, Young contends that it was improper for the ALJ to determine that she needed to elevate her legs four times a day for 30 minutes at a time, or one-fourth of the workday.  ECF No. 7-1, at 21.  She also asserts that this determination conflicts with her hearing testimony that she elevates her legs "four or five times throughout the day" for "maybe half an hour [or] 45 minutes" at a time.  ECF No. 7-1, at 21 (citing Tr. 47-49).

The ALJ's RFC assessment certainly addresses Young's need to elevate her legs (Tr. 24-28), and the ALJ was entitled to resolve any conflicting evidence that suggested that Young needed to elevate her legs more than four times a day for 30 minutes at a time.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118,

7

122 (2d Cir. 2012) (when the court reviews a denial of disability benefits, it must "defer to the Commissioner's resolution of conflicting evidence").  Accordingly, this Court finds that the ALJ properly considered the medical opinions and Young's testimony regarding her need to elevate her legs and that the RFC assessment is supported by substantial evidence.

### C.    The ALJ Properly Considered Young's Ability to Deal with Stress.

Young also argues that the ALJ erred when he failed to analyze Young's ability to handle stress.  ECF No. 7-1, at 22-25.  Specifically, Young asserts that the ALJ was required to conduct this analysis because Thomas Rosenthal, M.D. ("Dr. Rosenthal") opined that she "does not tolerate stressful situations" (Tr. 381), consultative psychiatrist examiner Renee Baskin, Ph.D. ("Dr. Baskin") opined that she was "moderately" limited in the ability to deal with stress, and because the ALJ observed her inability to handle stress when she cried during the hearing (Tr. 62).  ECF No. 7-1, at 23.  The Commissioner maintains that the ALJ appropriately analyzed Young's ability to deal with stress and that the RFC determination includes the proper mental limitations.  ECF No. 9-1, at 25-29.

"Because stress is 'highly individualized,' mentally impaired individuals 'may have difficulty meeting the requirements of even so-called 'low-stress' jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his [or her] ability to work."  *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 188-89 (W.D.N.Y. 2006) (citing S.S.R. 85-15, 1985 WL 56857 (S.S.A. Jan 1, 1985) and *Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y. 1996) ("Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments.")).  An ALJ is required to specifically inquire and

analyze a claimant's ability to manage stress.  *Haymond v. Colvin*, No. 1:11-CV-0631 MAT, 2014 WL 2048172, at *9 (W.D.N.Y. May 19, 2014).

Here, the ALJ made a specific finding about Young's ability to handle stress.  He explained in his decision that when he asked Young why she could not work, her answer concentrated "on her exertional limitations, not on her mental state."  Tr. 25.  Specifically, the ALJ noted that Young "equated stress with being in a job situation while in pain, and not being able to sit when needed, but not . . . to any particular mental limitations."  Tr. 25, 62.  Accordingly, the RFC determination limited Young to sedentary work where she would not be required to stand for more than 15 minutes at a time.  Tr. 24-28.  This observation, coupled with the medical evidence of record and the physical and mental limitations contained in the RFC determination, sufficiently addressed Young's ability to manage stress.

This Court also finds that Dr. Rosenthal's opinion that Young "does not tolerate stressful situations" does not undermine the ALJ's decision.  The ALJ discounted that opinion in his decision and gave proper reasons for doing so, including that it contained little objective supporting evidence (*see* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3)) and was inconsistent with the record as a whole (*see* 20 C.F.R.  §§ 404.1527(c)(4), 416.927(c)(4)).  Tr. 28.  The ALJ specifically gave "little weight" to the nonexertional limitations that Dr. Rosenthal imposed because his "field of expertise is family medicine, and not psychiatric practice," which was also a proper reason to discount his opinion (*see* 20 C.F.R.  §§ 404.1527(c)(5), 416.927(c)(5)).  Tr. 28.  Young does not argue that the ALJ improperly weighed Dr. Rosenthal's opinion, and this Court finds that the ALJ discounted that opinion in accordance with the SSA's regulations.  Thus, the ALJ did not err by ignoring Dr. Rosenthal's opinion that Young does not tolerate stressful situations.

As to Dr. Baskin's opinion, the ALJ properly afforded it "significant weight" and thus considered that Young was "moderately" limited in dealing with stress.  Tr. 27, 333.  Notably, Dr. Baskin also concluded that Young would have "minimal to no limitations being able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others." *Id.*  Accordingly, the ALJ indicated in the RFC assessment that Young can "understand, remember, and carry out simple instructions and perform simple tasks."  Tr. 24.

For the reasons explained above, this Court finds that the ALJ properly considered Young's difficulties handling stress and how those difficulties affect her ability to work.

**D.    The ALJ Properly Identified, Explained, and Resolved Inconsistencies Between the VE's Testimony and the DOT.**

Finally, Young argues that the ALJ erred because he failed to resolve conflicts between the VE's testimony as to the jobs she could perform and the DOT descriptions of those jobs. ECF No. 7-1, at 25-28.  The Commissioner maintains that the ALJ did not err because he specifically identified those conflicts at the hearing and in his decision (ECF No. 9-1, at 29-31), and this Court agrees.

Social Security Ruling 00-4p, which clarifies the SSA's standards for using a VE, provides that:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, *the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE* . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ]'s duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

> Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The [ALJ] must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

S.S.R. 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000) (emphasis added).   Thus, this Ruling "place[s] an affirmative duty on the ALJ to identify and resolve any conflict between the [VE]'s testimony and the DOT before relying on such testimony."   *Patti v. Colvin*, No. 13-CV-1123-JTC, 2015 WL 114046, at *6 (W.D.N.Y. Jan. 8, 2015) (citation omitted); *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015) ("The ALJ independently must identify conflicts between the [VE]'s testimony and the [DOT].")

Here, the VE testified that given Young's RFC, age, education, and work experience, she could work as a switchboard operator, telephone survey worker, and telephone marketer.  Tr. 29-30, 70-71.  The DOT descriptions for each of the named jobs are inconsistent with the ALJ's RFC determination that Young could perform only sedentary, unskilled work.  Tr. 24-28. Specifically, the switchboard operator and telephone marketer positions are defined as "semi-skilled," and the telephone survey worker is defined to require "light exertion."  *See* DOT, #235.622-022, 1991 WL 672175 (switchboard operator); #299.357-014, 1991 WL 672624 (telephone marketer); #205.367-054, 1991 WL 671725 (telephone survey worker).

Contrary to Young's assertion, however, the ALJ specifically resolved this conflict at the hearing and in his decision.  At the hearing, the VE indicated that the DOT definition of switchboard operator, which was last updated in 1987, categorizes the job as "semi-skilled" because it used to require "taking all incoming calls, routing them to proper extension, [and] taking messages."  Tr. 70.  The VE explained, however, that the switchboard operator position is

now considered "unskilled" work because "modern phone systems do not require all those functions now." *Id.* The ALJ explained the same in his decision. Tr. 29-30.

Similarly, the VE also indicated that the DOT definition of telephone marketer, which was last updated in 1988, is "semi-skilled," but that the position is now considered "unskilled" "due to technology, primarily improvements in computer software." Tr. 71. The VE further explained that "a little over 50 percent of the people employed in this work have a high school diploma or less which kind of confirms that [it is unskilled work]." Tr. 71. The ALJ reiterated this explanation in his decision. Tr. 30.

Finally, the VE testified that the DOT definition of telephone survey worker, which was last updated in 1981, listed the job as "light" because it "included census workers and door to door survey workers." Tr. 70. The VE explained that telephone survey work "is strictly sedentary and is the most common form of survey these days." *Id.* The ALJ set forth this explanation in his decision. Tr. 30.

Although the ALJ did not specifically ask the VE whether his testimony conflicted with the DOT, as Young asserts that he should have (ECF No. 7-1, at 27), it is readily apparent from the hearing testimony that the conflicts were resolved and that the ALJ obtained the requisite "reasonable explanation" for the conflicts before he relied on the VE. Tr. 70-71.

Young also criticizes the ALJ's use of the following commonly used boilerplate language: "Pursuant to SSR 00-4p, the undersigned has determined that the [VE's] testimony is consistent with the information contained in the [DOT]." ECF No. 7-1, at 26 (citing Tr. 30). This Court agrees that this language *by itself* is insufficient, *see, e.g.*, *Diaz v. Astrue*, No. 3:11-cv-317 (VLB), 2012 WL 3854958, at *6 (D. Conn. Sept. 5, 2012) ("This Court finds the ALJ's conclusive statement at the end of his Decision to be insufficient because the plaintiff never

received an explanation for the resolution of the inconsistency between the DOT characteristics and the RFC finding when her benefits were denied."), and it also agrees that the ALJ should have modified this language because the VE's testimony was clearly inconsistent with the DOT. This Court finds, however, that the ALJ satisfied his duty to identify, explain, and resolve the conflicts at issue based on the VE's explanation at the hearing and the ALJ's summary of that explanation in his decision.

## CONCLUSION

For the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is DENIED.  Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE.  The Clerk of Court is directed to enter judgment and close this case.


IT IS SO ORDERED.

Dated: September 30, 2016
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court